**William H. BRADY, Plaintiff, Appellant,**

v.

**THE CREDIT RECOVERY COMPANY, INC. and Leslie A. Clark, Defendants, Appellees.**

No. 98–1497.

United States Court of Appeals, First Circuit.

Heard Oct. 5, 1998.

Decided Nov. 18, 1998.

Richard J. Rubin, with whom Yvonne W. Rosmarin was on brief, for appellant.

Alan I. Margolies for appellees.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and LYNCH, Circuit Judge.

TORRUELLA, Chief Judge.

Plaintiff William H. Brady ("Brady") filed this action against defendant The Credit Recovery Company ("CRC" or "defendant") and its president and clerk Leslie A. Clark ("Clark" or "defendant") to redress alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §§ 1692–1692o, and of related state law obligations.

The district court dismissed Brady's FDCPA claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and dismissed the remaining state law claims without prejudice for lack of jurisdiction. In its memorandum and order, the district court recited the standard governing 12(b)(6) motions to dismiss but relied in part on materials outside of the pleadings. We therefore treat the motion as one for summary judgment. *See Dominique v. Weld,* 73 F.3d 1156, 1158 (1st Cir.1996).

We review a grant of summary judgment *de novo,* viewing the facts in the light most favorable to the nonmovant, plaintiff, *see id.,* and conclude that the order of dismissal/grant of summary judgment must be reversed. Accordingly, we remand this case for action consistent with this opinion.

## I. BACKGROUND

Prior to 1990, Brady's then wife leased an apartment and failed to pay $470 in rent. Brady never signed the lease in question but was named in the lease as a tenant. In August 1990, the landlord referred the Brady account to defendants for collection of the unpaid rent.

On September 4, 1990, defendants initiated the collection process by sending Brady a letter requesting payment of the debt. On September 13, Brady phoned Clark and explained that he had never signed the lease in question, that his ex-wife alone had signed the lease, and that therefore he had no obligation to pay the unpaid rent. Clark told Brady to submit a written letter to dispute the debt. Brady never put the dispute in writing.

Over the next few months, defendants sent Brady two more dunning letters and made two phone calls to him, none of which drew a response. In August 1991, CRC reported Brady's alleged debt to various credit reporting agencies without also reporting Brady's dispute.

Five years later, in February 1996, Brady applied for a mortgage to purchase a home. The mortgage company hired a credit agency, First American Credit Services ("First American"), to check Brady's credit history. Upon learning of Brady's bad credit report, the credit agency called defendants to inquire about the unpaid debt. As it had done in 1991, CRC again reported the unpaid rent as Brady's debt without reporting its disputed status. The mortgage company subsequently advised Brady that his financing was in jeopardy because of the listing of the rent as an outstanding debt on his credit report.

Brady immediately contacted defendants and informed them, once again, that he was not liable for the unpaid rent. Defendants again refused to remove the debt from Brady's credit report. One month later, Brady's attorney contacted CRC's attorney who, in turn, advised CRC to withdraw the bad credit report. CRC promptly removed the unpaid rent from Brady's credit report.

Thereafter, Brady brought this suit alleging that defendants violated the FDCPA by failing to inform First American that Brady disputed the debt. Brady also brings pendent state law claims under Mass. Gen. Laws ch. 93, §§ 24, 50 and ch. 93A.

## II. DISCUSSION

■ We review *de novo* a district court's grant of summary judgment. *See Bethlehem Steel Export Corp. v. Redondo Constr. Corp.,* 140 F.3d 319, 320 (1st Cir.1998).

■ Brady claims that defendants violated a provision of the FDCPA, which proscribes debt collectors from making any "false, deceptive or misleading representation[s] ... in connection with the collection of any debt." 15 U.S.C. § 1692e. More specifically, Brady argues that defendants violated § 1692e by failing to inform First American of the dis-

puted status of the unpaid rent listed on his credit report. Section 1692e(8) explicitly states that the failure of a debt collector to disclose the disputed status of a debt constitutes a "false, deceptive, or misleading representation." *Id.* 1692e(8).[1]

Defendants do not contest the facts. Rather, defendants argue that the facts do not, as a matter of law, rise to the level of "false, deceptive, or misleading representation[s]" in violation of § 1692e(8) because Brady never disputed the debt in writing. This case thus turns on a narrow question of statutory construction: Should § 1692e(8) of the FDCPA—which on its face does not impose a writing requirement—be read to impose a writing requirement on a consumer who wishes to dispute a debt?

■■■ "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning in all but the most extraordinary circumstance is finished." *Riva v. Commonwealth of Massachusetts,* 61 F.3d 1003, 1007 (1st Cir.1995) (quoting *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)) (internal quotation marks omitted). In other words, the court need not consult legislative history and other aids to statutory construction when the words of the statute neither create an ambiguity nor lead to an unreasonable interpretation. *Riva,* 61 F.3d at 1007 (quotations omitted). In searching a statute's text to determine congressional intent, we attribute to words that are not defined in the statute itself their ordinary usage, while keeping in mind that meaning can only be ascribed to statutory language if that language is taken in context. *Id.* (quotations omitted). Applying these tenets, we conclude that § 1692e(8) does not impose a writing requirement on a consumer who wishes to dispute a debt.

Because the FDCPA does not include the terms "dispute" or "disputed debt" in the section devoted to definitions, *see* 15 U.S.C. § 1692a, we look first to ordinary usage. In ordinary English "dispute" is defined as a "verbal controversy" and "controversial discussion." Webster's Third New International Dictionary (3d ed.1971). Clearly, the ordinary usage of "dispute" does not contemplate a writing. *See id.* Defendants argue that a writing requirement should be implied from other sections of the statute and from context. We address these arguments.

First, defendants argue that we need not resort to ordinary usage because the FDCPA does in fact define the term "disputed debts." In support of this contention, defendants point to § 1692g(b) which is captioned "disputed debts." *See* 15 U.S.C. § 1692g(b).[2] Although we cannot assume that § 1692g(b) defines this term simply because of its caption, *see* Pub.L. 90–321, § 502 (May 29, 1968), 82 Stat. 146, 147, reported as a note following 15 U.S.C. § 1601 (forbidding reliance on captions), defendants contend that the text of § 1692g(b) provides a definition of "disputed debts" that carries over to § 1692e(8). We disagree.

As stated above, we must keep in mind that meaning can only be ascribed to statutory language if that language is taken in context. *See Riva,* 61 F.3d at 1007. Viewing the language of § 1692e(8) in the context of other provisions of the FDCPA, it makes logical sense to conclude that the meaning of "disputed debt" in § 1692g(b) does not carry over to § 1692e(8).

First, the fact that other sections of the FDCPA—like § 1692g(b)—explicitly impose a writing requirement suggests that Congress's omission of such a requirement in

---

1. Section 1692e(8) states, in pertinent part:

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

    . . .

    (8) Communicating or threatening to communicate to any person credit information which

is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
15 U.S.C. § 1692e(8).

2. Section 1692g(b) establishes a validation process which affords consumers, only in an initial thirty-day period, the right to dispute a debt. *See* 15 U.S.C. § 1692g(b). Section 1692g(b) requires such disputes to be submitted in writing. *See id.*

§ 1692e(8) was not inadvertent. Moreover, a closer examination of the purposes and effects of the two provisions further supports our conclusion that Congress intended to require a writing under § 1692g(b) but not under § 1692e(8).

Under section 1692g(b) a consumer must dispute a debt *in writing*, within an initial thirty-day period, in order to trigger a debt validation process. *See* 15 U.S.C. § 1692g(b). Once a consumer exercises this right, a debt collector must cease all further debt collection activity until it complies with various verification obligations. *See id.* Section 1692g(b) thus confers on consumers the ultimate power vis-a-vis debt collectors: the power to demand the cessation of all collection activities. *See id.* Recognizing the broad consumer power granted by this provision, Congress expressly conditioned its exercise on the submission of written notification within a limited thirty-day window. *See id.*

In contrast, § 1692e(8) does not affect debt collection practices at all. *See* 15 U.S.C. § 1692e(8). Instead, § 1692e(8) merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history. *See id.* Given the much more limited effect of this provision, Congress's decision not to condition its exercise on the submission of written notification makes logical sense.

Our conclusion that § 1692g(b) does not define "disputed debt" for the entire FDCPA is further supported by the language of § 1692e(8) itself. If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector within the initial thirty-day period. *See* 15 U.S.C. § 1692g(b). But the plain language of § 1692e(8) requires debt collectors to communicate the disputed status of a debt if the debt collector "knows or should know" that the debt is disputed. *See* 15 U.S.C. § 1692e(8). This "knows or should know" standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is acquired. *See id.* Applying the meaning of "disputed debt" as used in § 1692g(b) to § 1692e(8) would thus render the provision's "knows or should know" language impermissibly superfluous. *See Bailey v. United States*, 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 140–41, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)) ("Judges should hesitate ... to treat [as surplusage] statutory terms in any setting....").

## III. CONCLUSION

We therefore conclude that § 1692e(8) does not impose a writing requirement on consumers who wish to dispute a debt. For the foregoing reasons, we *reverse* the district court's order of dismissal/grant of summary judgment and *remand* this case for action consistent with this opinion.