<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1977

                 LIBERTAD DAVILA-PEREZ, ET AL.,

                    Plaintiffs, Appellants,

                               v.

              LOCKHEED MARTIN CORPORATION, ET AL.,

                     Defendants, Appellees.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

      [Hon. Raymond L. Acosta, Senior U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Wallace, Senior Circuit Judge,

               and O'Toole, Jr., District Judge.

                     _____________________

   Luis Anbal Avils, with whom Rubn Coln-Morales, and Avils
& Coln Morales LLP were on brief, for appellants.
   Francisco E. Coln-Ramrez, with whom Coln, Coln & Martnez  
was on brief, for appellee Martin Marietta Services, Inc.

                      ____________________

                        February 8,2000  
                      ____________________

        TORRUELLA, Chief Judge.  This case arises from the events
of May 12, 1995 that resulted in the death of Bienvenido Gonzlez.  
The appellants--his widow, Libertad Dvila-Prez, their children,
his mother, and his sister--brought this personal injury action
against appellee Martin Marietta Corporation, Gonzlez's employer,
and Teledyne Ryan Aeronautical Corporation.  Based on the
statutory employer defense made available under the Puerto Rico
Workmen's Compensation Act ("PRWCA"), 11 L.P.R.A.  2, 21, the
district court granted summary judgment in favor of appellee and
dismissed all claims against it.  We affirm on the alternative
ground that the appellee was immune from suit under the Longshore
and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.  905,
pursuant to the Defense Base Act, 42 U.S.C.  1651(a)(2).
                           BACKGROUND
        For purposes of this appeal, the Court adopts the
following relevant facts.  Gonzlez was employed by Martin
Marietta, an independent contractor retained by the U.S. Navy.  He
worked as an engine shop supervisor at the Aerial Target System at
Roosevelt Roads Naval Station in Ceiba, Puerto Rico.  On May 12,
1995, while Gonzlez was conducting a test on new equipment, an
explosion occurred.  Gonzlez suffered second and third degree
burns over thirty percent of his body and was hospitalized until
his death on July 8, 1995.
        Martin Marietta had procured workers' compensation and
employers' liability insurance from CIGNA, pursuant to its contract
requirements with the Navy.  Benefits were paid to appellants in
accordance with the policy terms.  No policy was obtained from the
State Insurance Fund Corporation of Puerto Rico on behalf of
Gonzlez.
        The appellants filed this action pursuant to articles
1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A.  5141,
5142 (1997), alleging that the damages suffered by Gonzlez were
the result of diverse negligent acts of the U.S. Navy, Martin
Marietta, and Teledyne.  Martin Marietta answered with a Motion for
Summary Judgment asserting that it had insured Gonzlez under the
CIGNA policy and that it had immunity under the LHWCA, as extended
by the Defense Base Act, to cover employees in military
installations in U.S. territories and possessions.  The appellants
objected, arguing that the Defense Base Act no longer applies to
Puerto Rico because it ceased to be a territory following the
enactment of the Constitution of the Commonwealth of Puerto Rico on
July 25, 1952.  Without resolving the applicability of the Defense
Base Act, the district court entered judgment for Martin Marietta
based on the Puerto Rico statutory employer defense because "the
objective of workers' compensation, i.e., provide benefits and
medical care to employees injured while at work without regard to
fault, was squarely met and that decedent and his family received
compensation justly due."

                       STANDARD OF REVIEW
        Summary judgment is appropriate if there is no genuine
issue as to any material fact and the moving party is entitled to
judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  We review
summary judgment de novo, "viewing 'the entire record in the light
most hospitable to the party opposing summary judgment, indulging
all reasonable inferences in that party's favor.'"  Euromotion,
Inc. v. BMW of N. Am., Inc., 136 F.3d 866, 869 (1st Cir. 1998)
(quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990));
see also Morris v. Government Dev't Bank of P.R., 27 F.3d 746, 748
(1st Cir. 1994).  This standard of review permits us to uphold the
district court's summary judgment regardless of whether we reject
or adopt its rationale, so long as an "independently sufficient
ground" is made manifest by the record.  Mesnick v. General Elec.
Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Garside v. Osco
Drug, Inc., 895 F.2d 46, 48-49 (1st Cir. 1990)); see also Houlton
Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir.
1999); Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir. 1996).
                           DISCUSSION
        The issue before this Court is whether Martin Marietta is
entitled to immunity from tort claims because they are precluded by
the applicable workers' compensation system.  The appellee proposes
two sources for statutory immunity: the LHWCA and the PRWCA.  
Because we conclude that the LHWCA applies and provides the
exclusive remedy, that is where we begin our analysis.
        In 1927, Congress passed the LHWCA, ch. 509, 44 Stat.
1424 (codified as amended at 33 U.S.C.  901-950), to establish a
system of uniform federal compensation for all injuries to
employees in "the maritime field up to the line where local
compensation would not be excluded by the existence of federal
admiralty jurisdiction."  Royal Indem. Co. v. Puerto Rico Cement
Corp., 142 F.2d 237, 239 (1st Cir. 1944) (citing S. Rep. No. 69-
973; H. Rep. No. 69-1767); see also Calbeck v. Travelers Ins. Co.,
370 U.S. 114, 121-22, 124 (1962) (concluding that Congress enacted
LHWCA to provide uniform coverage and avoid uncertainty as to
source of compensation).  In other words, the LHWCA filled a gap
between the coverage of maritime law and state law created by the
Constitution and derivative case law.  See Calbeck, 370 U.S. at
115-25.
        In 1941, Congress extended the provisions of the LHWCA to
U.S. military bases outside the United States by enacting the
Defense Base Act, ch. 357, 55 Stat. 622 (codified as amended at 42
U.S.C.  1651-1654).  See Royal Indem., 142 F.2d at 239.  
Specifically, the Act applies to employees working on "any lands
occupied or used by the United States for military or naval
purposes in any Territory or possession outside the continental
United States."  42 U.S.C.  1651(a).  In 1944, in Royal Indemnity,
we held that under the Defense Base Act, the federal compensation
scheme of LHWCA applied to military defense bases in Puerto Rico
without regard to local compensation laws.  See 142 F.2d at 239.  
Although the First Circuit has yet to resolve whether Puerto Rico's
Constitution, enacted in 1952, see Pub. L. 447, 66 Stat. 327 (1952)
(codified as amended at 48 U.S.C.  731(d)), altered Puerto Rico's
status under the Defense Base Act, the Puerto Rico Supreme Court
did not consider the issue when it applied the Defense Base Act to
Puerto Rico in 1967, see W.R.A. v. Superior Ct. of P.R., 94 P.R.R.
314, 323-24 (1967) (following Royal Indemnity and finding that
language of statute "outside the United States" clearly includes
Puerto Rico).
        Based on dicta in Vega-Mena v. United States, 990 F.2d
684, 689-90 (1st Cir. 1993), explicitly questioning the viability
of Royal Indemnity, the appellant requests that we reconsider
whether for the "narrow and specialized purposes of the Defense
Base Act, Puerto Rico is [] a 'Territory or possession outside the
continental United States' as those terms are there intended to be
understood."  Of the three grounds which the appellant raises in
support of its argument, (1) the relative significance of the
Roosevelt Roads base, (2) the citizenship status of all employees
at the base, and (3) the alleged change in Puerto Rico's status
subsequent to the passage of the Defense Base Act, only the third
has merit.  Appellants' argument that the Roosevelt Roads base is
more like those in states than those in Guantnamo, Cuba or the
Phillippines is unavailing.  We agree with the appellee that if the
Defense Base Act applied to Alaska as an incorporated territory
until the point where it officially became a state, see Alaska
Omnibus Act of June 25, 1959  40, Pub. L. 86-70, 73 Stat. 141,
150; Budson Co., Contract 926 v. Oikari, 270 F. Supp. 611, 612-13
(N.D. Ill. 1967), it is untenable that Puerto Rico is close enough
to a state to be excluded from the Defense Base Act.  Likewise, we
agree with the appellee that there is no support for the contention
that the citizenship of the base employees is a factor under LHWCA
or the Defense Base Act, particularly as the logical presumption is
that the Act is intended for American citizens serving in the
military abroad.  Therefore, we consider only whether circumstances
have changed such that Puerto Rico is no longer a territory under
the Defense Base Act.  Although the appellant argues that the 1952
Constitution alters the status of Puerto Rico under the Act, the
text of the statute, its legislative history, and subsequent
amendments indicate otherwise.
        We begin with the language of the statute, and only if
the statute is ambiguous or leads to an unreasonable interpretation
do we turn to the legislative history and other aids.  See Brady v.
Credit Recovery Co., Inc., 160 F.3d 64, 66 (1st Cir. 1998);
Grunbeck v. Dime Sav. Bank of N.Y., 74 F.3d 331, 336 (1st Cir.
1996); Riva v. Massachusetts, 61 F.3d 1003, 1007 (1st Cir. 1995).  
Territory is not defined in the Act or in the case law interpreting
it.  See 42 U.S.C.  1651(b); Vega-Mena, 990 F.2d at 690 n.7.  When
a word is not defined within the statute, it is given its ordinary
meaning, with all due consideration to the context.  See Brady, 160
F.3d at 66; Grunbeck, 74 F.3d at 336; Riva, 61 F.3d at 1007.  
However, the term "'territory' does not have a fixed and technical
meaning" and "Puerto Rico may be found to be included within one
act whose coverage extends to territories of the United States and
excluded from another."  Vega-Mena, 990 F.2d at 690 n.7.  Thus,
whether Puerto Rico comes within the term "territory" depends upon
the character and aim of the Act.  See id.
        The purpose of the Defense Base Act is to provide
uniformity and certainty in availability of compensation for
injured employees on military bases outside the United States.  See
Royal Indem., 142 F.2d at 239; see also O'Keefe v. Pan Am. World
Airways, Inc., 338 F.2d 319, 322 (5th Cir. 1964) (observing that
Act was adopted at request of Secretary of War to save on insurance
expenses).  The only consideration is whether the military base is
in a territory or possession on land "outside the continental
United States."  42 U.S.C.  1651(a)(2).  Therefore, by the plain
meaning of the text, Puerto Rico is still covered by the Defense
Base Act because (1) it is still subject to the plenary powers of
Congress under the territorial clause, see Harris v. Rosario, 446
U.S. 651 (1980); (2) Congress has exclusive jurisdiction over the
lands occupied by Roosevelt Roads, see Quiles Viuda de Fonte v.
Colsa, Inc., 99 J.T.S. 2 at 461-62 (1999); and (3) "continental
United States" is defined to include only "the States and the
District of Columbia," 42 U.S.C.  1651(b)(4).
        This interpretation is supported by legislative history
specifically indicating that Puerto Rico is within the reach of the
Act.  See Royal Indem., 142 F.2d at 239 (citing H. Rep. No. 77-
1070 (1941)).  We are further convinced when we consider that the
Defense Base Act was amended at least four times in the decade
following the enactment of Puerto Rico's Constitution and Puerto
Rico's status as a territory was left unchanged.  See 42 U.S.C.A.
1651, 1652 (West 1994).  We must assume that Congress was aware
of our holding in Royal Indemnity that Puerto Rico comes under the
Defense Base Act and chose not to change Puerto Rico's status, see
Lorillard v. Pons, 434 U.S. 575, 580 (1978); Garca v. Friesecke,
597 F.2d 284, 293 (1st Cir. 1979) (citing cases), for there is no
doubt that Congress knew the language necessary to include Puerto
Rico as a state, cf. 28 U.S.C.  1332(d) ("The word 'States,' as
used in this section, includes the Territories, the District of
Columbia, and the Commonwealth of Puerto Rico.").  Most important,
the definition of "continental United States" was added to the
Defense Base Act only seven years after the alleged change in
Puerto Rico's status without any reference to that fact.  See
Budson, 270 F. Supp. at 613.  In sharp contrast, in response to
Alaska's transition from a territory to a state, Congress
immediately deleted the reference to Alaska in the Defense Base Act
and added the definition of "continental United States" to ensure
that Alaska was excluded from the scope of the Act.  See Alaska
Omnibus Act, Pub. L. 86-70, 73 Stat. 141; Budson, 270 F. Supp. at
612-13.  With nothing before us to suggest that application of the
Defense Base Act to Puerto Rico would contravene the purpose of the
Defense Base Act, we defer to the judgment of Congress to include
Puerto Rico as a territory.
                           CONCLUSION
        For these reasons, we hold that Puerto Rico is still a
territory for purposes of the Defense Base Act and that Martin
Marietta was entitled to immunity under the LHWCA.  Summary
Judgment is affirmed.

</body>

</html>