PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1463
_____

MAUREEN RICCIO,
on behalf of herself and all others
similarly situated,
                              Appellant

v.

SENTRY CREDIT, INC.;
JOHN DOES 1-25

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 3-17-cv-01773
District Judge: The Honorable Brian R. Martinotti

Argued February 19, 2020

Before: SMITH, *Chief Judge*, McKEE, AMBRO,
CHAGARES, JORDAN, HARDIMAN, GREENAWAY,
JR., SHWARTZ, KRAUSE, RESTREPO, BIBAS,
PORTER, MATEY, and PHIPPS, *Circuit Judges*

(Filed: March 30, 2020)

Joseph K. Jones                    **[ARGUED]**
Benjamin J. Wolf
Jones Wolf & Kapasi
375 Passaic Avenue
Suite 100
Fairfield, NJ  07004
          *Counsel for Appellant*


Jacob C. Cohn                      **[ARGUED]**
Gordon Reese Scully Mansukhani
Three Logan Square
1717 Arch Street, Suite 610
Philadelphia, PA  19103

Peter G. Siachos
Gordon Reese Scully Mansukhani
18 Columbia Turnpike
Suite 220
Florham Park, NJ  07932
          *Counsel for Appellee*

2

———————————————

OPINION OF THE COURT
———————————————

SMITH, *Chief Judge.*

This case presents a question of statutory interpretation: does 15 U.S.C. § 1692g(a)(3) allow debtors to orally dispute a debt's validity?

It also presents a question of stare decisis: should our en banc Court resolve a circuit conflict by overturning a three-decades-old panel decision which has been eroded by intervening Supreme Court authority?

Because we answer both questions affirmatively, we will overrule *Graziano v. Harrison*'s contrary interpretation of § 1692g(a)(3) and affirm.

**I**

**A**

The statutory interpretation question arises from language which appears in the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p (FDCPA). The FDCPA protects against abusive debt collection practices

3

by imposing restrictions and obligations on third-party debt collectors. *See* §§ 1692b–1692j.

This case concerns one of those requirements: that debt collectors send debtors a letter notifying them of their right to dispute the debt. *See* § 1692g. Section 1692g(a) specifies five things the letter, often called a "validation notice," must include:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

4

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

The question presented is whether the letter must require all disputes to be in writing, or whether § 1692g(a)(3) permits oral disputes.

Before answering that question, it is instructive to examine other protections the FDCPA provides when debts are disputed. For instance, § 1692g(b) demands that:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

5

In addition, debt collectors are prohibited from reporting disputed debts to credit agencies without noting the fact of a dispute. *See* § 1692e(8) (prohibiting collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed"). Finally, collectors seeking payments on multiple debts owed by the same debtor cannot apply a payment to any disputed debts. *See* § 1692h ("If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.").

**B**

We first considered the import of § 1692g(a)(3) in *Graziano*. *See* 950 F.2d 107 (3d Cir. 1991). There, a three-judge panel expressed "the view that, given the entire structure of section 1692g, subsection (a)(3) must be read to require that a dispute, to be effective, must be in writing":

> Adopting [a contrary] reading of the statute would thus create a situation in which, upon the debtor's non-written dispute, the debt collector would be without any statutory ground for assuming that the debt was valid,

6

but nevertheless would not be required to verify the debt or to advise the debtor of the identity of the original creditor and would be permitted to continue debt collection efforts. We see no reason to attribute to Congress an intent to create so incoherent a system. We also note that there are strong reasons to prefer that a dispute of a debt collection be in writing: a writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts.

*Id.* at 112; *accord Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013) ("In *Graziano v. Harrison*, we specifically concluded that 'subsection (a)(3), like subsections (a)(4) and (a)(5), contemplates that any dispute, to be effective, must be in writing.'" (citation omitted) (quoting *Graziano*, 950 F.3d at 112)).

## C

In the matter now before us, Maureen Riccio fell behind on payments to M-Shell Consumer Oils. Sentry Credit bought the debt and sought to collect on it. So it sent Riccio a letter containing the following notification:



IMPORTANT NOTICE

**YOU ARE HEREBY NOTIFIED:**
1. That the above account has been assigned to us for collection.
2. That the above entitled account is in default and your attention is needed to resolve this matter.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

THIS IS AN ATTEMPT TO COLLECT A DEBT BY A DEBT COLLECTOR AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NOTICE: SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION

Contact us with one of our convenient options:

| Mail: ✉ | Call: ☎ | Online: 🖥 |
|---|---|---|
| SENTRY CREDIT, INC.<br>P.O. Box 12070<br>EVERETT, WA 98206-2070 | Call Toll-Free at:<br>800-608-2581 | www.sentrycredit.com<br>MasterCard · American Express · VISA |

Compl. Ex. A.

Riccio sued,[1] alleging the letter violated § 1692g(a)(3) by providing a debtor with multiple options for contacting Sentry Credit rather than explicitly requiring any dispute be in writing. App. 53-54. Sentry Credit agreed that it had to require Riccio to dispute the debt in writing under

[1] The FDCPA authorizes private actions and imposes strict liability for violations, with statutory damages up to $1000 and potential fee-shifting. *See* § 1692k.

8

*Graziano*, but the company viewed its letter as complying with that requirement. It therefore moved for judgment on the pleadings, and the District Court granted the motion. *See* 2018 WL 638748, at *4-6 (D.N.J. Jan. 31, 2018).

Riccio timely appealed. The District Court exercised jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 and review statutory interpretation questions de novo. *See United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020).

## II

As noted, a panel of this Court previously concluded § 1692g(a)(3) requires that "any dispute, to be effective, must be in writing." *Graziano*, 950 F.2d at 112. Yet reading the statutory text with fresh eyes—and more importantly, with the past three decades of Supreme Court statutory-interpretation caselaw—we think § 1692g(a)(3) permits oral disputes.

## A

We begin by looking at § 1692g(a)(3) itself. That provision refers only to "disputes," without specifying oral or written. Used generally, the word fairly encompasses both forms of communication. *See, e.g.*, *Dispute*, Oxford English Dictionary (2d ed. 1989) ("To discuss, debate, or argue (a question); . . . To argue against, contest,

9

controvert; To call in question or contest the validity or accuracy of a statement, etc., or the existence of a thing.").

We must read § 1692g as a whole. Subsection (a)(3) merely calls for "the consumer" to "dispute[] the validity of the debt" in order to rebut the statutory presumption of validity. But (a)(4) requires "the consumer [to] notif[y] the debt collector *in writing*" before forcing the collector to mail documentation verifying the debt. (emphasis added). And (a)(5) similarly demands that the consumer make a "*written* request within the thirty-day period" to compel the collector to "provide the consumer with the name and address of the original creditor, if different from the current creditor." (emphasis added). Subsection (b) then echoes (a)(4) and (5), obliging collectors to "cease collection . . . until . . . obtain[ing] verification" if the debtor "notifie[d] the debt collector" of a dispute or requested the creditor's identity "*in writing*." (emphasis added). That intra-section variation strongly signals that § 1692g permits oral disputes. "We refrain from concluding here that the differing language in the [various] subsections has the same meaning in each." *Russello v. United States*, 464 U.S. 16, 23 (1983).

We must also consider the entirety of the FDCPA. Like § 1692g(a)(3)—but unlike (a)(4), (a)(5), and (b)— §§ 1692e(8) and 1692h also discuss "dispute[s]" without specifying a method of communication. That inter-section variation amplifies the variation within § 1692g and, in

10

our view, refutes Riccio's suggestion that Congress inadvertently omitted a writing requirement from § 1692g(a)(3). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello*, 464 U.S. at 23 (alteration in original) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)).

Finally, we consider one of the most venerable of our interpretive canons: the rule against surplusage. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) ("[T]he Court will avoid a reading which renders some words altogether redundant."); *see also Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803) (using this canon to interpret U.S. Const. art. III, § 2, cl. 2). Collectively, the text of § 1692g(a)(3), (a)(4), and (b) signifies that if a debtor makes the effort to dispute the debt in writing, the collector must immediately stop collecting, verify the debt, and respond. Yet if the debtor merely disputes the debt orally, the collector can continue attempts to collect the debt. It will, though, eventually have to prove the debt's validity.

Injecting a writing requirement into (a)(3) effectively strikes that provision from the statute. It is a truism that if a debt isn't presumed valid, the debt collector must eventually verify it. Subsection (a)(3) merely restates that

11

point: if the debtor disputes the debt, the collector must verify it at some point down the road. But (a)(4) and (b) demand that if the debtor disputes the debt in writing, the collector must prove its validity immediately. So if every dispute must be conveyed in writing, collectors must prove every debt immediately—no collector can ever count on its future ability to prove a debt. Put differently, inserting a writing requirement into (a)(3) means that every dispute triggers (a)(4) and (b). That simply can't be right. If every dispute triggers (a)(4) and (b), then (a)(3) has no independent effect.

* * *

The upshot: § 1692g(a)(3)'s plain meaning permits a debtor to dispute a debt orally. And when a "'statute's language is plain, the sole function of the courts'—at least where the disposition required by the text is not absurd—'is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)).

Riccio tries using this absurd-result exception to shoehorn a writing requirement into § 1692g(a)(3).[2] But

---

[2] Riccio also uses *United States v. American Trucking Associations*, 310 U.S. 534, 543 (1940), to argue she need not show that permitting oral disputes would be absurd, just that it would be unreasonable. Simply put, that

12

that dog won't hunt. "An absurd interpretation is one that 'defies rationality or renders the statute nonsensical and superfluous.'" *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) (quoting *United States v. Moreno*, 727 F.3d 255, 259 (3d Cir. 2013)). As long as Congress could have any conceivable justification for a result—even if the result carries negative consequences—that result cannot be absurd. *See United States v. Fontaine*, 697 F.3d 221, 228 (3d Cir. 2012) ("[S]tandard interpretive doctrine . . . defines an 'absurd result' as an outcome so contrary to perceived social values that Congress could not have 'intended' it." (quoting John F. Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387, 2390 (2003))); *Hanif v. Attorney Gen.*, 694 F.3d 479, 487 (3d Cir. 2012); *see also In re Visteon Corp.*, 612 F.3d 210, 234 (3d Cir. 2010) ("Virtually all laws would be absurd if judged by whether they accomplish a perfect solution to an underlying legislative concern.").

---

misrepresents the current state of the law. To depart from a statute's plain meaning today, the text must dictate a result so unreasonable that it amounts to an absurdity. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 187 n.33 (1978); *see also MORI Assocs., Inc. v. United States*, 102 Fed. Cl. 503, 537-39 (2011) (detailing *American Trucking Associations*'s practical abrogation).

Reading § 1692g(a)(3) to permit oral disputes falls far short of the high bar this Court has set. In fact, allowing oral disputes makes sense: it provides debtors multiple methods to dispute debts while assigning various rights depending on the method.[3] An oral dispute can still defeat the presumption of validity, still prevent collectors from reporting the debt without noting the dispute, and still preclude debt collectors holding multiple debts of the same debtor from applying a payment to the disputed debt. It just doesn't force the debt collector to immediately stop, verify, and respond in the way the FDCPA requires if a dispute is in writing. That's hardly absurd. If nothing else, it is easier to prove written disputes and therefore easier to enforce the additional protections that attach.[4]

---

[3] On this point, it bears noting that purposively reading the FDCPA underscores our textual conclusion. At bottom, expanding the ways a debtor can dispute a debt's validity makes it easier for debtors to invoke its protections. So demanding written disputes not only flouts the FDCPA's text—it also hoodwinks the Act's purpose.

[4] Relatedly, at oral argument, Riccio's counsel argued that permitting oral disputes would spawn conundrums over the "magic words" that distinguish a formal dispute from informal grumbling. Oral Argument at 3:16, 4:57 (Feb. 19, 2020), https://www2.ca3.uscourts.gov/oralargument/audio/18-1463Ricciov.%20SentryCreditInc.mp3; *see also id.* at 6:05, 50:31. We think district courts are more than

14

Lest any doubt remains, *Lamie v. United States Trustee* should settle the matter. There, the Supreme Court refused to "read an absent word into [a] statute" despite "an apparent legislative drafting error" that rendered the statute "awkward, and even ungrammatical." 540 U.S. 526, 530-38 (2004). "With a plain, nonabsurd meaning in view, we need not proceed in this way," the Court said, noting their "longstanding" "unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome." *Id.* at 538.

So too here. Even if we thought Congress inadvertently omitted a writing requirement from § 1692g(a)(3), and even if we thought permitting oral disputes precipitated an incoherent system, we must still recognize the validity of oral disputes based on § 1692g's plain meaning. "If Congress enacted into law something different from what it intended, then it should amend the statute . . . . 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" *Id.* at 542 (second omission in original) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring in the judgment)).

---

capable of that linedrawing. In fact, they already do it when reviewing a debtor's written communication.

15

**B**

Other courts have reached the same conclusion. The Second, Fourth, and Ninth Circuits reject a writing requirement, openly splitting with *Graziano*. *See Clark v. Absolute Collection Serv., Inc.*, 741 F.3d 487, 490-91 (4th Cir. 2014) (per curiam); *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285-86 (2d Cir. 2013); *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1080-81 (9th Cir. 2005). And without noting the split, the First, Fifth, Sixth, and Seventh Circuits have taken the same position. *See Macy v. GC Servs. Ltd.*, 897 F.3d 747, 757-58 (6th Cir. 2018); *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 347 n.6 (7th Cir. 2018); *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 249-50 (5th Cir. 2017); *Brady v. Credit Recovery Co.*, 160 F.3d 64, 66-67 (1st Cir. 1998).

**C**

In sum, we no longer think § 1692g(a)(3) requires written disputes. Simply put, "Congress did not write the statute that way." *United States v. Naftalin*, 441 U.S. 768, 773 (1979). Subsections (a)(4), (a)(5), and (b) command a written dispute; (a)(3) does not. "We would not presume to ascribe this difference to a simple mistake in draftsmanship." *Russello*, 464 U.S. at 23.

## III

The foregoing details our reasoning, and our disagreement with *Graziano*. Yet we must consider whether stare decisis justifies our upholding that precedent. "*Stare decisis*—in English, the idea that today's Court should stand by yesterday's decisions—is 'a foundation stone of the rule of law.'" *Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2409 (2015) (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 798 (2014)). To be sure, stare decisis "is not an inexorable command," but it is critical to "promote[] the evenhanded, predictable, and consistent development of legal principles, foster[] reliance on judicial decisions, and contribute[] to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). In fact, sometimes it "means sticking to some wrong decisions." *Kimble*, 135 S. Ct. at 2409. After all, "it is usually 'more important that the applicable rule of law be settled than that it be settled right.'" *Id.* (quoting *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 406 (1932) (Brandeis, J., dissenting)). That's especially true in statutory interpretation cases like this one, because Congress can correct unintended interpretations. *See id.* at 2409-10.

Before overruling its own precedent, the Supreme Court looks for "'special justification[s]' [] over and above the belief 'that the precedent was wrongly decided.'"

*Kimble*, 135 S. Ct. at 2409 (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 266 (2014)). Those include "the quality of [the prior case]'s reasoning, the workability of the rule it established, its consistency with other related decisions, developments since the decision was handed down, and reliance on the decision." *Janus v. AFSCME*, 138 S. Ct. 2448, 2478-79 (2018). Though we, as a lower court, "play a different role in the federal system," we join virtually every other Circuit in weighing those same considerations before overturning our own caselaw. *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc); *see also United States v. Sykes*, 598 F.3d 334, 338 (7th Cir. 2010), *aff'd*, 564 U.S. 1 (2011), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 310 (2d Cir. 2007) (en banc); *United States v. Heredia*, 483 F.3d 913, 918-19 (9th Cir. 2007) (en banc); *Glazner v. Glazner*, 347 F.3d 1212, 1216 (11th Cir. 2003) (en banc); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 575 (Fed. Cir. 2000) (en banc), *vacated on other grounds*, 535 U.S. 722 (2002); *Stewart v. Dutra Constr. Co.*, 230 F.3d 461, 467 (1st Cir. 2000), *rev'd on other grounds*, 543 U.S. 481 (2005); *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1137-38 (5th Cir. 1995) (en banc); *McKinney v. Pate*, 20 F.3d 1550, 1565 n.21 (11th Cir. 1994) (en banc).

We also consider three factors unique to courts of appeals. *First*, prior en banc decisions carry more stare

decisis weight than prior panel decisions. *See United States v. Games-Perez*, 695 F.3d 1104, 1124 (10th Cir. 2012) (Gorsuch, J., dissental) ("[I]t is surely uncontroversial to suggest that the point of the *en banc* process, the very reason for its existence, is to correct grave errors in panel precedents when they become apparent, even if the panel precedents in question happen to be old or involve questions of statutory or regulatory interpretation."); *Igartua v. United States*, 654 F.3d 99, 100 (1st Cir. 2011) (statement of Lynch, C.J., and Boudin & Howard, JJ.) (declining "to reopen settled issues which have already been given en banc treatment"); *McKinney*, 20 F.3d at 1565 n.21 ("It must be recalled that this is the first time this court sitting en banc has addressed this issue; thus, the implications of *stare decisis* are less weighty than if we were overturning a precedent established by the court en banc."). *See generally* Letter from Justice Sandra Day O'Connor to Ret. Justice Byron R. White (June 23, 1998), *published in Review of the Report by the Commission on Structural Alternatives for the Federal Courts of Appeals Regarding the Ninth Circuit and the Ninth Circuit Reorganization Act: Hearing on S. 253 Before the Subcomm. on Admin. Oversight & the Courts of the S. Comm. on the Judiciary*, 106th Cong. 71 (1999) [hereinafter *Ninth Circuit Review*] ("It is important to the federal system as a whole that the Courts of Appeals utilize en banc review to correct panel errors within the circuit that are likely to otherwise come before the Supreme Court."); Letter from Justice Antonin Scalia to Ret. Justice

19

Byron R. White (Aug. 21, 1998), *published in Ninth Circuit Review* 72 ("[T]he function of en banc hearings . . . is not only to eliminate intra-circuit conflicts, but also to correct and deter panel opinions that are pretty clearly wrong. . . . The disproportionate segment of [the Supreme Court's] discretionary docket that is consistently devoted to reviewing [a court of appeals's] judgments, and to reversing them by lop-sided margins, suggests that this error-reduction function is not being performed effectively.").

*Second*, "[w]hile we generally 'decide cases before us based on our own examination of the issue, not on the views of other jurisdictions,' the[] more recent [contrary] decisions [from other circuits] suggest that we should 'consider whether the reasoning applied by our colleagues elsewhere is persuasive.'" *Bastardo-Vale v. Attorney Gen.*, 934 F.3d 255, 267 (3d Cir. 2019) (en banc) (quoting *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010) (en banc)); *see also United States v. Corner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc) ("Although . . . it is rarely appropriate to overrule circuit precedent just to move from one side of a [circuit] conflict to another, reconsideration is more appropriate when [we] can eliminate the conflict by overruling a decision that lacks support elsewhere."); *cf. Wagner v. PennWest Farm Credit, ACA*, 109 F.3d 909, 912 (3d Cir. 1997) ("In light of such an array of [unanimous] precedent [from other courts of appeals], we would require a compelling basis to hold otherwise before

effecting a circuit split."); *Butler Cty. Mem'l Hosp. v. Heckler*, 780 F.2d 352, 357 (3d Cir. 1985) ("[T]his Court should be reluctant to contradict the unanimous position of other circuits.").

*Third*, "on rare occasions a circuit precedent, though not directly overruled or superseded, nonetheless might crumble" if "case law postdating 'the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.'" *Stewart*, 230 F.3d at 467 (quoting *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 592 (1st Cir. 1995)).

All three factors support overturning *Graziano*. Given *Lamie* and other recent Supreme Court decisions, we believe the panel that decided *Graziano* would decide it differently today. And what's more, *Graziano* was only a panel decision; our en banc Court has never expressed a view on the issue presented. By expressing our view today, we put an end to a circuit split and restore national uniformity to the meaning of § 1692g.

Traditional stare decisis considerations point in the same direction. For starters, district courts applying *Graziano* have split over whether identical language violates its rule. *See Cadillo v. Stoneleigh Recovery Assocs., LLC*, No. 17-7472, 2019 WL 1091391, at \*4 (D.N.J. Mar. 8, 2019) (collecting cases), *appeal docketed*, 19-2811 (3d Cir. Aug. 8, 2019).

21

Additionally, "the growth of judicial doctrine" has undermined *Graziano*'s reasoning. *Patterson v. McClean Credit Union*, 491 U.S. 164, 173 (1989), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071, *as recognized in Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 383 (2004). Recall how *Graziano* framed its own conclusion: "subsection (a)(3) . . . *contemplates* that any dispute, to be effective, must be in writing." 950 F.2d at 112 (emphasis added). That is a curious verb choice, since it suggests the panel thought § 1692g(a)(3) meant something other than what it says. *See, e.g.*, *Contemplate*, Oxford English Dictionary (2d ed. 1989) ("To have in view, look for, expect, take into account as a contingency to be provided for. To have in view as a purpose; to intend, purpose.").

But that is not how we read statutes today. In the years before *Graziano*, the Supreme Court engaged in statutory interpretation with statements like, *"[a]bsent a clearly expressed legislative intention to the contrary*, th[e statutory] language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) (emphasis added). In the years since *Graziano*, the Court has instructed us "that [the] legislature says . . . what it means and means . . . what it says." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (alteration and omissions in original) (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)). In other words,

22

"[a]s Justice Kagan recently stated, 'we're all textualists now.'" Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 Harv. L. Rev. 2118, 2118 (2016) (reviewing Robert A. Katzmann, *Judging Statutes* (2014)) (quoting Justice Elena Kagan, The Scalia Lecture: A Dialogue with Justice Kagan on the Reading of Statutes at 8:28 (Nov. 17, 2015), http://perma.cc/BCF-FEFR). We decline to breathe new life into *Graziano*'s atextual interpretation of § 1692g(a)(3), an interpretation that has already made us the "legal last-man-standing" among the courts of appeals. *Kimble*, 135 S. Ct. at 2411.

Moreover, any legitimate reliance interests seem minimal. Overturning *Graziano* merely requires debt collectors to prospectively tweak their collection notice template. If anything, since debt collectors may operate nationwide, overturning *Graziano* should make their job easier by allowing them to use the same form no matter where a debtor resides. By contrast, resuscitating *Graziano* would mean collectors must use one notice in Pennsylvania, New Jersey, Delaware, and the Virgin Islands, but another everywhere else. And overturning *Graziano* helps debtors too, since the case's atextual rule requires more than the statutory text mandates for them to dispute a debt's validity. *See supra* note 3 and accompanying text.

\* \* \*

23

By today's standards, *Graziano*'s "reasoning was clearly wrong"; changes in the way we interpret statutes "have unmoored the case from its doctrinal anchors." *Morrow v. Balaski*, 719 F.3d 160, 180 (3d Cir. 2013) (Smith, J., concurring). Both traditional stare decisis principles and considerations unique to courts of appeals convince us that *Graziano* should be, and now is, overruled.

**IV**

Perhaps anticipating the result we announce today, Riccio asks us to curb our holding's retroactive application so that *Graziano* still governs her claim. Her only support for that argument is New Jersey precedent allowing state-court judges to limit a holding's retroactive application "when 'considerations of fairness and justice, related to reasonable surprise and prejudice to those affected' counsel [them] to do so." *Malinowski v. Jacobs*, 915 A.2d 513, 517 (N.J. 2007) (quoting *N.J. Election Law Enf't Comm'n v. Citizens to Make Mayor–Council Gov't Work*, 526 A.2d 1069, 1073 (N.J. 1987)).

Yet federal courts follow a different rule. Our holding today "is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). "[W]e can scarcely permit 'the substantive law [to]

24

shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* (alterations in original) (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 543 (1991) (opinion of Souter, J.)). We will, therefore, apply to this case our new rule that debt collectors need not require debtors to dispute the validity of their debt in writing.[5]

---

[5] We do not suggest that debt collectors who sent *Graziano*-compliant letters before today will be on the hook for failing to foresee our change in the law. Just as collectors who act "in good faith in conformity with any [agency] advisory opinion" cannot be liable if that "opinion is amended, rescinded, or" judicially invalidated, § 1692k(e), collectors should not be penalized for good-faith compliance with then-governing caselaw. To that end, we note district courts can withhold damages for unintentional errors, § 1692k(b), award no damages for trivial violations, § 1692k(a)(1), and even award attorney's fees to the collector if the debtor's suit "was brought in bad faith and for the purpose of harassment," § 1692k(a)(3). *See generally Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 597-99 (2010). We have confidence in district courts to exercise that discretion appropriately.

25

**V**

Our new rule dooms Riccio's claim. As we and several other Circuits have held, debt collection notices must intelligibly convey the § 1692g(a) requirements. *See Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (collecting cases). Put another way, a hypothetical "least sophisticated debtor" should be able to read the notice and reasonably discern her rights. *Id.*; *cf. United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (noting the least sophisticated debtor standard "also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care").[6]

Sentry Credit's collection notice easily clears that bar. Its plainspoken language reproduces § 1692g(a)(3)–(5) nearly word-for-word, alerting the least sophisticated debtor of her rights as effectively as does the statute itself.

---

[6] Although Judge Matey reaches the same conclusion as the Court, it is his view that the atextual "least sophisticated debtor" test announced in *Graziano* warrants reexamination. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (noting that the "least sophisticated debtor" requirement "appears nowhere in the text of the statute"). In his view, in an appropriate case, we should revisit whether that standard comports with the ordinary meaning of the FDCPA.

A collection notice can never mislead the least sophisticated debtor by relying on the language Congress chose. And since that's all this notice did, Sentry Credit did not violate § 1692g.

## VI

In short, we conclude that debt collection notices sent under § 1692g need not require that disputes be expressed in writing. In doing so, we overrule *Graziano*'s contrary holding. Because Sentry Credit's notice perfectly tracked § 1692g's text, we will affirm the judgment of the District Court.