**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1449
_____

UNITED STATES OF AMERICA

v.

JOSEPH R. JOHNSON, JR.,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cr-00367-001)
District Judge: Honorable Harvey Bartle, III

_____

Argued June 22, 2021

Before: SMITH, *Chief Judge*, MATEY and FISHER, *Circuit Judges*.

(Filed: November 23, 2021)

Emily McKillip **[Argued]**
Linwood C. Wright, Jr.
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
        *Counsel for Appellee*

Abigail E. Horn **[Argued]**
Federal Community Defender Office for the Eastern District of
Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
        *Counsel for Appellant*

_____

OPINION OF THE COURT
_____

MATEY, *Circuit Judge*.

Joseph Johnson developed an unusual fascination with the allegations of sexual assault against entertainer Bill Cosby. Hoping to cast doubt on the accusers, Johnson posed as an attorney and filed a fabricated document on the civil docket of one of the lawsuits against Cosby. His trick was quickly discovered, and the Government brought criminal charges against Johnson for making a false statement and identity theft, leading to a conviction after a jury trial. Johnson now appeals, arguing that the Government failed to prove that his statements were material.

We agree. Johnson's behavior wasted public time and resources and distracted court officials from their work. But only Congress enjoys the authority to turn conduct into a federal crime. And while the Government presented plenty showing that Johnson's statements were false, it offered no evidence and elicited no testimony from the only individual it proposed as the government decisionmaker—the judge in the underlying litigation—to explain how the filing could influence a judicial decision. Because that evidence was necessary for the Government to establish liability under 18 U.S.C. § 1001, we will reverse Johnson's convictions and remand for entry of a judgment of acquittal.

## I. BACKGROUND

The story of Johnson's false filing begins, as does much in our age, on the internet. Johnson became fixated on the claims against Cosby and decided to come to his defense. At first, his acts were no more distracting than most of the internet, largely posts about Cosby's innocence. Then, Johnson decided to leave the virtual world and insert himself into the real one.

## A. The Civil Action

The rest of the story follows a winding road, and starts with Andrea Constand, who sued Cosby in 2005 alleging sexual assault. In 2015, Constand filed another lawsuit in the Eastern District of Pennsylvania, claiming defamation and invasion of privacy for Cosby-related claims. As in 2005, Constand was represented by attorney Dolores Troiani. When Troiani filed the 2015 Complaint, she inadvertently failed to attach an exhibit. The next day, Troiani filed a "Praecipe to Attach Exhibit 'A' to Plaintiff's Complaint," along with the

3

omitted exhibit and a certificate of service.[1] The filing was docketed, and that appeared to be the end of the matter.

It was not. A few months later, Troiani received several emails from an individual using the name "Tre Anthony." All were sent on the same day, and all related to Constand's allegations against Cosby. In the first, "Tre Anthony" warned Troiani that her "client's physical street address . . . will be released to the media and published online unless you notify the undersigned of your objection to the same no later than close of business on January 4, 2015." (App. at 362.) A threat heightened by including Constand's residential address.

A second email followed, promising to "ma[ke] public through all media outlets and social media" the information in the first email, as well as information relating to other alleged Cosby victims, whom "Tre Anthony" declared to have made "false[] and fraudulent[]" allegations against Cosby. (App. at 367, 369.) And a third, sent to Troiani, other attorneys, and The New York Times, stated that "[t]he name, physical address and telephone number of each of the plaintiffs" would be "circulated on social media" and other outlets. (App. at 377.)

"Tre Anthony" attached several documents to his emails, including an unsigned Internal Revenue Service "Information Referral" form alleging that Constand had failed to report income derived from "baseless lawsuits" premised "on a decade old campaign of . . . false allegations." (App. at

---

[1] A "praecipe" is a "written motion or request seeking some court action." *Praecipe*, Black's Law Dictionary (11th ed. 2019).

371–73.) He also attached copies of the complaints from Constand's lawsuits.

All of which brings us to Johnson's alleged crime. Roughly a month later, someone hand-delivered an envelope to the Clerk of the United States District Court for the Eastern District of Pennsylvania. The envelope contained a document entitled "Praecipe to Attach Exhibit 'A' to Plaintiff's Complaint." It was a photocopy of the praecipe filed by Troiani, along with a photocopy of Troiani's original certificate of service. But this filing attached the unsigned IRS Information Referral form and complaints previously circulated by "Tre Anthony," in effect, accusing Constand of failing to report income obtained in connection with her lawsuits.

Following the customary course, the Clerk's office uploaded all the documents to the docket, triggering an automatic email notification to Troiani. Confused, Troiani called the Clerk's office, who directed her to the chambers of the presiding judge (the "Judge"). The Judge then entered an order striking the false praecipe and exhibit from the docket, explaining that the "filing [wa]s fraudulent and was not filed by the attorney whose purported signature appears on the document." (App. at 598.)

## B.     Johnson Is Discovered, Indicted, and Convicted

The "Case of the False Praecipe" was referred to the Federal Bureau of Investigation, and after an extensive inquiry, the Government determined that Johnson was the culprit. A chain of business records connected "Tre Anthony's" email account to Johnson. Johnson, the Government learned, used his

5

work computer to repeatedly access the docket for Constand's lawsuit (including the order striking the false praecipe), and to obsessively conduct internet searches relating to Constand and Cosby. And a forensic analysis conducted at the FBI's lab in Quantico, Virginia discovered Johnson's fingerprints on the tape used to seal the envelope containing the false praecipe.

Evidence piled high in hand, the Government persuaded a grand jury in the Eastern District of Pennsylvania to return an indictment charging Johnson with one count of knowingly and willfully making materially false, fraudulent, and fictitious statements and representations and aiding and abetting, in violation of 18 U.S.C. § 1001 and § 2 (Count 1);[2] and one count of knowingly and without lawful authority using a means of identification during and in relation to the false statements, and aiding and abetting, in violation of 18 U.S.C. § 1028A(a)(1), (c)(4) and § 2 (Count 2).

After a three-day trial, a jury found Johnson guilty on both counts. Johnson moved for a judgment of acquittal, and, in the alternative, a new trial. The District Court denied the motion, and sentenced Johnson to thirty-two months of

---

[2] The indictment did not specify a subsection of § 1001, but it mirrored the language of subsection (a)(2), which forbids the "mak[ing]" of "any materially false, fictitious, or fraudulent statement or representation." 18 U.S.C § 1001(a)(2). Subsection (a)(3), by contrast, prohibits "mak[ing] or us[ing] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry," and (a)(1) proscribes "falsif[ying], conceal[ing], or cover[ing] up by any trick, scheme, or device a material fact." *Id.* § 1001(a)(1), (a)(3).

imprisonment and three years of supervised release, as well as a special assessment of $200. Johnson appealed.[3]

## II. DISCUSSION

Johnson raises two challenges to his conviction. First, he argues that the Government's evidence cannot prove the materiality element of 18 U.S.C. § 1001. That the praecipe was struck from the docket, he contends, may have been proof of its falsity, but not its materiality. Second, Johnson claims that the District Court's jury instructions constructively amended the indictment. While the Government's indictment charged the "making" of a false statement, the District Court instructed the jury that it could convict Johnson for "making or using" a false document, which impermissibly broadened its scope.

We agree with Johnson's first argument, so we need not reach his second.[4] The Government's trial evidence was insufficient for a rational jury to conclude Johnson's misstatements were material to the Judge, the only pertinent governmental decisionmaker identified by the Government at trial. More, it would be a miscarriage of justice for his conviction to stand when the Government failed to prove all elements of the offense. As a result, Johnson's conviction for false statements must be reversed. And because Johnson's

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[4] Though we note that the Government concedes that the indictment was constructively amended, arguing only that Johnson suffered no prejudice.

7

conviction for aggravated identity theft depends on his false-statements conviction, we will reverse it as well.[5]

## A. We Review Johnson's Sufficiency-of-the-Evidence Challenge for Plain Error

Johnson and the Government disagree on the standard of review for Johnson's sufficiency-of-the-evidence challenge. We conclude that plain-error review is required.

### 1. Preserving Issues on Appeal

Our standard of review turns on whether Johnson preserved his sufficiency challenge by "squarely" presenting the issue to the District Court. *United States v. McCulligan*, 256 F.3d 97, 101 (3d Cir. 2001). While preservation does "not require any particular incantation," *United States v. Miller*, 833 F.3d 274, 283 (3d Cir. 2016), it does demand that the defendant give the district court a chance to "consider and resolve" the question later raised on appeal. *Puckett v. United States*, 556 U.S. 129, 134 (2009). Preserving *arguments* is often key;

---

[5] Aggravated identity theft prohibits identity theft "during and in relation to" any of the felonies enumerated in subsection (c), including material false statements. 18 U.S.C. § 1028A(a)(1); *id.* § 1028A(c)(4) (defining "felony violation" to include false statements). Conviction for aggravated identity theft depends on commission of an enumerated felony, so the reversal of a conviction for the predicate felony requires reversal of the aggravated identity theft conviction. *See, e.g.*, *United States v. Camick*, 796 F.3d 1206, 1219 (10th Cir. 2015) (reversing aggravated identity theft conviction because of reversal of material false statements conviction).

8

"merely raising an *issue* that encompasse[d] the appellate argument" can be inadequate. *United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013); *see also id.* at 340 (distinguishing between "issues" and "arguments," and explaining that the former can encompass "more than one of the latter"). So "when a Rule 29 motion raises specific grounds, or arguments . . . all such arguments not raised are unpreserved on appeal" and are reviewed for plain error. *United States v. Williams*, 974 F.3d 320, 361 (3d Cir. 2020). A sensible rule that encourages litigants to directly identify for the district court the purported grounds for error.

## 2. Johnson Did Not Raise Materiality

Johnson contends that he raised "a general Rule 29 motion," sufficient "to preserve all [his] sufficiency claims for appeal." (Reply Br. at 7–8.) Not so.[6] At the close of the Government's evidence, Johnson moved for a judgment of acquittal focusing "specifically" on the lack of "evidence provided" as to whether he had "caused" a false statement to be filed. (App. at 681.) As a result, Johnson argued, "the Government ha[d] not met [its] burden at this point to send th[e] case to the jury." (App. at 681.) Johnson did not mention materiality. The District Court denied the motion.

---

[6] Putting to one side whether Johnson's Rule 29 motion was a "general motion," we note that we have not held that a "general" Rule 29 motion preserves all sufficiency arguments for appeal. To the contrary, in *United States v. Williams* we found it "unnecessary . . . to . . . hold that a broadly stated Rule 29 motion preserves all arguments bearing on the sufficiency of the evidence." 974 F.3d at 361.

9

After trial, Johnson renewed his motion for acquittal. In a full supporting brief, he raised several specific challenges to his conviction[7] but, as before, he did not bring up materiality. Both motions thus "raise[d] specific grounds, or arguments" about the sufficiency of the evidence. *Williams*, 974 F.3d at 361. And as neither alerted the District Court to any concerns about materiality, that argument is "unpreserved on appeal." *Id.* We therefore review it for plain error.

3.      Plain-Error Review

Using the four-part framework of *United States v. Olano*, "we reverse only if (1) there was an 'error'; (2) the error was 'plain'; (3) the error prejudiced or 'affected substantial rights'; and (4) not correcting the error would 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Greenspan*, 923 F.3d 138, 147 (3d Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 732, 734–36 (1993)). Under plain-error review, insufficient evidence requires reversal when upholding the conviction would "result[] in a fundamental miscarriage of justice." *United States v. Castro*, 704 F.3d 125, 137–38 (3d Cir. 2013) (quoting *United States v. Barel*, 939 F.2d 26, 37 (3d Cir. 1991)).

---

[7] For example, Johnson argued that the Government presented no proof of aiding and abetting, that expert testimony and business records were improperly admitted, and that the evidence of his fingerprints on the envelope that contained the false praecipe was not sufficient to support the false statements conviction.

Ordinarily, when the government has failed to prove each essential element of the crime charged, we will reverse under *Olano*'s fourth prong. *United States v. Jones*, 471 F.3d 478, 480 (3d Cir. 2006); *see also Castro*, 704 F.3d at 141 (explaining that the Government's "complete failure of proof" on the falsity element of a false-statements conviction required reversal, as "the conviction [was] infected with plain error and constitute[d] a miscarriage of justice"). As we will explain, that is the case here.

**B.     The Government Did Not Prove Materiality**

Section 1001 proscribes, among other things, "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" in a matter within the jurisdiction of the federal government. 18 U.S.C. § 1001(a)(2). Establishing a violation requires: "(1) that [the defendant] made a statement or representation; (2) that the statement or representation was false; (3) that the false statement was made knowingly and willfully; (4) that the statement or representation was material; and (5) that the statement or representation was made in a matter within the jurisdiction of the federal government." *United States v. Moyer*, 674 F.3d 192, 213 (3d Cir. 2012). Johnson argues that the Government's evidence did not prove materiality. We agree.

1.     Materiality Under 18 U.S.C. § 1001

To be material, a false statement must have "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995)

11

(cleaned up). We have explained that a statement may be material "even if no agency actually relied on the statement in making a decision." *United States v. McBane*, 433 F.3d 344, 350 (3d Cir. 2005) (citing *In re Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995)). The issue is not actual reliance, but whether the false statement had a "natural tendency to influence" or was "capable of influencing" the governmental decisionmaking body at issue. *Gaudin*, 515 U.S. at 509.[8] But "[d]eciding whether a statement is 'material'" still requires a court to determine the subsidiary question of "what decision was the agency trying to make?" *Id.* at 512.

Put differently, materiality requires evidence showing that "[the false statements] were 'of a type capable of influencing a *reasonable* decisionmaker,'" *Moyer*, 674 F.3d at 215 (quoting *McBane*, 433 F.3d at 351), and that the false statements could have bearing on an actual decision entrusted to the decisionmaker, *United States v. Litvak*, 808 F.3d 160, 173–4 (2d Cir. 2015). That is the key, and the key to the Government's case against Johnson is its singular focus at trial

---

[8] A now-canonical example is the very false, but very unsuccessful statement made by a suspect-turned-defendant to an FBI agent to put her off the scent. *See, e.g.*, *United States v. Lupton*, 620 F.3d 790, 806 (7th Cir. 2010) (observing that "a frequent aim of false statements . . . is to cast suspicion away from the declarant"). That the defendant's statements did not actually influence the particular decisions of the particular agent is of no moment, so long as the "misrepresentation[], under normal circumstances, could cause FBI agents to re-direct their investigation to another suspect, question their informant differently or more fully, or perhaps close the investigation altogether." *McBane*, 433 F.3d at 352.

on the Judge as the pertinent decisionmaker. We turn next to that evidence.

2.      The Evidence Presented

To prove materiality, the Government relied on the testimony and actions of the Judge. The Judge, and the Judge alone, was the pertinent "decisionmaker" in the Government's trial theory. This focus on the Judge, however, is ultimately fatal to the Government's case because the record contains no evidence that any decision entrusted to the Judge could have possibly been influenced by the praecipe. The praecipe filed by Johnson contained an unsigned exhibit that accused Constand of failing to report income. But given the subject matter of the underlying litigation and posture of the case, there is no evidence that this false statement, even if considered by the Judge, could have been relevant, much less material, to any decision.[9] And without evidence of some decision entrusted to the Judge that could have been affected by Johnson's no doubt

---

[9] The Government did not elicit testimony, for example, about the need for pretrial rulings on the authenticity or relevance of the documents filed pursuant to the praecipe or their admissibility under Rules 403 or 404(b) of the Federal Rules of Evidence. Nor does the record support an inference that the Judge would need to make a credibility determination as to Constand, to which the praecipe arguably could have been relevant. And without the Government identifying even what decision could be influenced, "a finder of fact reasonably could not have inferred from the government's evidence that" the praecipe materially influenced that unidentified decision. *United States v. Finn*, 375 F.3d 1033, 1040 (10th Cir. 2004).

13

false statement, the Government cannot establish materiality. *Gaudin*, 515 U.S. at 512; *Litvak*, 808 F.3d at 173–4.

> The Judge testified about the civil docket generally: [A] docket is the history of the case. Every action that has been taken either by the lawyers or by the court is recorded in the docket, so it's a memory of the case. So whenever I have a matter to be adjudicated or resolved in a particular case, I look at the docket to see what is the history of that and where it fits into the developments of that case.

(App. at 448.) "[E]very time I look at the docket," the Judge explained, "I extract information. And then, based on that information, I take action." (App. at 448.) The Judge then testified about the false praecipe in particular. He explained he first learned about it when his deputy told him there was "a paper of some sort" or "a paper in the docket" that was not filed by Troiani. (App. at 451). The Judge asked his staff to prepare an order striking the false praecipe. They did so, and the Judge entered the order,[10] deleting it from the docket.

> This evidence—that the praecipe was false and that it was deleted—became the basis of the Government's materiality argument at summation:

---

[10] The order read: "This filing is fraudulent and was not filed by the attorney whose purported signature appears on the document. The matter will be referred to the appropriate authority for further action." (App. at 598).

14

You know, in fact, that it was material, because it had to be capable of influencing the judicial branch. And that it was, because [the Judge], in fact, testified that, yeah. You know, I look at the docket. I look at the entries on the dockets. That's how I make my decisions, based on the entries on the docket. I consider those things, and in this case, there was an entry on the docket. There was a filing. It was a false filing. He took action in Filing Number 7 on February 2, 2016, and, in fact, struck it from the record.

So he took action. So not only was it capable of influencing his decision, but it did. So it was, in fact, material.

(App. at 703.) That, as we explain, is insufficient.

### 3. The Evidence Does Not Prove Materiality

Johnson agrees that "[t]he materiality standard does not require that the statement actually influence the decision-maker, but rather that it be capable of doing so." (Opening Br. at 17 (citing *McBane*, 433 F.3d at 350).) But, he argues, the Government did not meet this requirement.

He is correct. As noted above, the only evidence of materiality presented to the jury was: (1) that the false praecipe Johnson filed was on the docket, which the Judge consults generally to make decisions; and (2) that filing of the false praecipe prompted the Judge to strike it from the docket. But neither of those unremarkable observations show any decision entrusted to the Judge—the sole decisionmaker identified at

15

trial—that could have been influenced by the praecipe. Considered both separately and in total, that evidence cannot clear even the low sufficiency bar on plain-error review.

### i. *Docket Entries*

Start with dockets and judicial decisions. That the false praecipe made its way onto the Judge's docket established that Johnson made a statement (the filing) to a governmental decisionmaker (the Judge). And the Judge's testimony established that docket filings, in the abstract, might affect his decisionmaking process. (*See* App. at 448 ("Well, every time I look at the docket, I extract information. And then, based on that information, I take action.").) But the Government elicited no testimony about *how* those filings might affect that decisionmaking process. And regardless, the fact that the Judge considers items on the docket in the ordinary course cannot support a finding that *this* filing was material beyond a reasonable doubt, especially because the Government failed to identify a single decision entrusted to the Judge in *this* case that could have been influenced by the praecipe.

In short, the problem with the Government's proof is that not every misrepresentation presented to a governmental decisionmaker is inherently "material." A statement might be false, but still incapable of affecting anything, as seen in the Tenth Circuit's decision in *United States v. Camick*, 796 F.3d 1206 (10th Cir. 2015). There, the defendant posed as his brother and filed a provisional patent application with the U.S. Patent and Trademark Office. *Id.* at 1210–11. The government came calling with an indictment, leading to a conviction for making a false statement. *Id.* at 1212–13. The Tenth Circuit reversed, agreeing there was insufficient evidence of

16

materiality. Camick made a false statement to a governmental decisionmaker. But the government offered no evidence explaining how the statement might have influenced the PTO because Camick filed only a provisional application. Until the PTO reviewed for patentability, there was no decision to influence. *Id.* at 1218–19. Camick's statements were false, but still immaterial. So too here, as the Government failed to identify a decision entrusted to the Judge that the praecipe could influence.

At other times, information presented to the government is "relevant," but ultimately still immaterial—after all, "'relevance' and 'materiality' are not synonymous." *United States v. Rigas*, 490 F.3d 208, 234 (2d Cir. 2007). "To be 'relevant' means to relate to the issue. To be 'material' means to have probative weight, i.e., reasonably likely to influence the tribunal in making a determination required to be made." *Id.* (quoting *Weinstock v. United States*, 231 F.2d 699, 701 (D.C. Cir. 1956)).[11] Thus, to prove materiality, the government cannot simply present evidence that a statement was false and the information generally within the purview of the governmental decisionmaker to which it was addressed. Rather, it bears the burden of adducing testimony or other evidence explaining the purpose or use of the statement and some specific way or ways in which the statement might affect

---

[11] Dictionary definitions confirm this distinction. *Compare Relevant*, Black's Law Dictionary (11th ed. 2019) (defining "relevant" as "[l]ogically connected . . . to"), *with Material*, Black's Law Dictionary (11th ed. 2019) (defining "material" as, among other things, "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential").

a particular decision of the decisionmaking body. Applying those principles here, the record contains evidence of no particular decision made by the Judge that was or could have been influenced by the praecipe.

Another Tenth Circuit decision, *United States v. Finn*, 375 F.3d 1033 (10th Cir. 2004), drives home this point. In *Finn*, a (now-former) special agent with the U.S. Department of Housing and Urban Development altered an official expense report to cover up an auto accident. *Id.* at 1036–37. A false statement, said the Tenth Circuit, but not a material one under § 1001. True, the testimony presented at trial established that the altered expense report "fell generally within the jurisdiction" of HUD. *Id.* at 1040. Meaning the reports were, in some sense, "relevant" to the pertinent governmental decisionmaker. But that was not enough. The government had failed to explain "the purpose or use of case expenditure forms from the agency's perspective," and how the altered expense report "could or would have examined the case expenditure form at issue for the purpose of determining the propriety of the underlying expense." *Id.* Without such a showing, the government had failed to prove materiality. *Id.*

So too here. The Government elicited generalized testimony from the Judge: that he usually looks to the civil docket in making decisions, and of course, that Johnson stuck a false praecipe on it. But, as *Finn* highlights, this established only relevance, not materiality. The Government did not present evidence connecting Johnson's filing to a specific decision by the Judge that might have been affected by Johnson's false statement. And "[t]o form the basis of a jury's conclusion, [the Government's] evidence . . . cannot be purely theoretical and evidence of such a capability to influence must

18

exceed mere metaphysical possibility." *Litvak*, 808 F.3d at 172–73. All of which left materiality unproven.

### ii. The Deleted Filing

Nor is materiality shown by the Judge's decision to delete the false praecipe from the docket. This was the Government's trial theory, as it explained: "[the Judge] struck [the false praecipe] from the record. So he took action. So not only was it capable of influencing his decision, but it did. So it was, in fact, material." (App. at 703.)

We fail to see the connection. That the praecipe was struck could be evidence that it was false; in fact, the order deleting the filing noted specifically that the "filing [wa]s *fraudulent* and was *not filed by the attorney* whose purported signature appears on the docket." (App. at 598 (emphases added)). But "falsity and materiality [are] *separate* requirements of misrepresentation." *Kungys v. United States*, 485 U.S. 759, 781 (1988); *see also Gaudin*, 515 U.S. at 509 (citing and quoting from *Kungys*, 485 U.S. at 770, to define the materiality element of 18 U.S.C. § 1001). As Judge Easterbrook once remarked, "[d]eliberately using the wrong middle initial . . . is not a felony—not unless the right middle initial could be important." *United States v. Kwiat*, 817 F.2d 440, 445 (7th Cir. 1987). The "could be" is missing from the Government's evidence. The Government needed proof of an actual decision that could have been affected by the false praecipe. *See Gaudin*, 515 U.S. at 512 ("Deciding whether a statement is 'material' requires the determination of . . . [the] question[] . . . 'what decision was the agency trying to make?'").

19

The Judge's decision merely to delete a false filing is not the type of decision that, without more, itself gives rise to materiality, at least on the record here. This conclusion is informed by the Second Circuit's decision in *United States v. Litvak*, where the defendant was charged and convicted of making false statements to the Department of the Treasury. 808 F.3d at 166, 170. The government argued his statements were material because they caused Treasury to "actually refer[] the matter . . . for investigation." *Id.* at 173. The Second Circuit disagreed. After all, the court explained, "*every* prosecution for making a false statement undoubtedly involves 'decisions' by the government to refer for investigation, investigate, and prosecute the defendant for making the false statement at issue." *Id.* (emphasis added). The government, rather, had to present evidence of a "decision" that could be influenced beyond the mere fact that "the [governmental decisionmaker] had received the misstatements and that its staff[] had reviewed" and reacted to them. *Id.* at 174 (citing *Rigas*, 490 F.3d at 236).

Johnson's case is even further afield. To conclude otherwise would be to render the materiality element meaningless, and the scope of § 1001 absurd. Suppose Johnson had submitted his false praecipe on December 31, with a message inarguably incapable of affecting the Judge's decisionmaking. "Happy New Year," perhaps. The filing was docketed, and after appreciating the well-wishes, the Judge struck it from the docket. Was this a "decision," in the ordinary sense of the word? Of course. But could this be a material decision supporting a conviction under § 1001? Of course not. Government decisionmakers perform all sorts of administrative and ministerial tasks. Sensibly, § 1001 focuses not on those workday activities, but on "misrepresentation[s]

or concealment[s] . . . predictably capable of affecting, *i.e.*, ha[ving] a natural tendency to affect, *the official decision*" of a government agency. *Kungys*, 485 U.S. at 771 (emphasis added); *see also United States v. Richardson*, 676 F.3d 491, 505 (5th Cir. 2012) (relevant decision in 18 U.S.C. § 1001 case considering false statement made to judge was "whether to grant or to deny . . . motion for admission pro hac vice"). The Government cannot prove materiality simply by presenting evidence that Johnson's false filing was received and later deleted from the docket.

4.      The Government's Unpersuasive Responses

Perhaps sensing the weakness of its trial case, the Government responds to all this with a new theory: that Johnson's false praecipe was "material" not because it was "capable of influencing [the Judge's] decision," (App. at 703), but because "by misrepresenting that the document was being filed by a party to the lawsuit, rather than a total stranger to the litigation, it *enabled the document to be filed*" by the Clerk in the first place, (Response Br. at 14 (emphasis added).) That the Government presented no evidence that Johnson's filing could influence a pertinent decision of the Judge in the litigation, it now argues, is of no moment.

Let us count the problems with this position. For one, the record makes clear this was not the theory presented at trial. When Johnson moved in limine to preclude the testimony of the Judge, the Government asserted quite the opposite, arguing the testimony was relevant to materiality because the Judge alone was the governmental decisionmaker:

21

> As the judicial decision maker in the civil case in which the false statement was filed, [the Judge] is in the best position to determine whether the false statement did, or was capable of affecting judicial action. *Within the context of this case, judicial non-decision making court personnel are not in a position to make this determination.*

(App. at 98 (emphasis added).) By contrast, the Government explained that staff personnel like the court clerks who accept and upload filings were not.

The Government's summation banged this drum loudly, repeatedly arguing that materiality is measured by its ability to "affect[] judicial action," (App. at 98.)[12] As the Government put it: "[the filing] was submitted to the judicial branch, because it was submitted . . . for [the] *Judge*[*'s*] . . . consideration." (App. at 703 (emphasis added).) The Government's trial theory was not that materiality was established by docketing the false document, but that it could (and did) influence an actual judicial decision by the Judge.

As the jury never heard the Government's new theory, we are loath to consider it. As the Second Circuit explained in *United States v. Rigas*, "[a]lthough a statement's materiality

---

[12] Examples abound: (a) "it had to be capable of influencing the judicial branch"; (b) "[the] Judge . . . , in fact, testified that, yeah. You know, I look at the docket. . . . That's how I make my decisions, based on the entries on the docket"; and (c) "[the Judge] took action in Filing Number 7 on February 2, 2016, and, in fact, struck it from the record," (App. at 703.)

22

may present a question of law resolvable by an appellate court in some contexts, a criminal defendant is entitled to have a jury determine his guilt on every element of his alleged crime and the jury must pass on the materiality of a defendant's misrepresentations." 490 F.3d at 231 n.29 (citations omitted); *see also Chiarella v. United States*, 445 U.S. 222, 236 (1980) (stating that courts "cannot affirm a criminal conviction on the basis of a theory not presented to the jury"); *United States v. Farrell*, 126 F.3d 484, 491 (3d Cir. 1997) (noting that we do not ordinarily "independently review the record before us and attempt to assess the evidence relevant to an alternative theory . . . upon which to uphold a conviction"). "Accordingly, we will not consider in the first instance arguments regarding materiality that were not presented to the jury." *Rigas*, 490 F.3d at 231 n.29.

And for another, this new theory is unsupported by the record. The Government's argument reduces to two points: Johnson filed a document that he claimed was made by Troiani, establishing "falsity"; and "only [Troiani] could make such a filing," establishing "materiality." (Response Br. at 25.) Or, as it asserts elsewhere, "[t]he misrepresentation of the filer's identity was material because by misrepresenting that the document was being filed by a party to the lawsuit, rather than a total stranger to the litigation, it enabled the document to be filed." (Response Br. at 14.)[13]

The problem, though, is that the evidence presented to the jury suggested just the opposite: that almost anything with a proper case number would be scanned and uploaded to the

---

[13] Arguments all briefed without a citation to any supporting evidence in the record.

civil docket, regardless of the identity of the signatory. One civil docket clerk, for example, testified that "anyone can drop off filings for an attorney or anything at the front counter." (App. at 392.) No names are recorded, or, it appears, any signatures checked. Rather, when the Clerk's Office receives a paper filing, "[the clerks] scan in the filing and upload it to the ECF system." (App. at 398). Another clerk agreed: "if something comes in hard copy . . . the docket clerks downstairs will" simply "scan it and upload it to ECF." (App. at 432). Far from proving that masquerading as Troiani enabled the false praecipe to be filed, the record reveals that Johnson's identity was immaterial, and that Johnson could have filed the same documents under his, or any other, name. A point, Johnson dryly notes, illustrated by this case, where the District Court's docket, and our own, are littered with irrelevant filings made by a nonparty.

Lacking support for both its trial and appellate theories, the Government seeks refuge in civil procedural rules and case law as proof of the centrality of the identity of the filer in civil proceedings.[14] But even assuming their relevance, the Government presented none of this to the jury. *See In re Winship*, 397 U.S. 358, 364 (1970) ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt.") (citation omitted); *Gaudin*, 515 U.S. at 522–23 (explaining that

---

[14] In particular, the Government directs us to Rule 11 (which requires every filing to be signed by the filer and state the filer's contact information and provides for sanctions for false representations to the court), and Rule 24 (which sets out the requirements for intervention) of the Federal Rules of Civil Procedure.

24

the Constitution requires that a jury, not a judge, decide the materiality of a false statement). And while, as the Supreme Court has recently instructed, "an appellate court conducting plain-error review may consider the *entire* record—not just the record from the *particular proceeding* where the error occurred," the new supposed evidence the Government points us to was not a part of either. *Greer v. United States*, 141 S. Ct. 2090, 2098 (2021). The hour is too late for these theories to save the Government's case.

**C.      Johnson Prevails on Plain-Error Review**

The Government's lack of evidentiary support as to "materiality" established, we turn last to the *Olano* factors, and conclude that relief is warranted. The first three are easily met, and, "[a]lthough Rule 52(b) is permissive, not mandatory," the Supreme Court has recently reminded us "that courts should correct a forfeited plain error that affects substantial rights," where it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1906 (2018) (cleaned up). Generally, the government's failure to prove an essential element of an offense is a miscarriage of justice—one sufficient to warrant reversal of the conviction for plain error. *See, e.g.*, *United States v. Morton*, 993 F.3d 198, 206 (3d Cir. 2021); *Castro*, 704 F.3d at 138; *United States v. Retos*, 25 F.3d 1220, 1231–32 (3d Cir. 1994); *United States v. Xavier*, 2 F.3d 1281, 1287 (3d Cir. 1993). Nothing here encourages us to depart from this general rule. To permit Johnson's conviction to stand, as we put it recently, "would be to endorse conviction merely for being bad—an outcome abhorrent to the tenet that, in our legal system, we convict people only of specific crimes." *United*

25

*States v. Harra*, 985 F.3d 196, 211 (3d Cir. 2021) (internal quotation marks omitted). We will not do so.

### III. CONCLUSION

Let there be no doubt on two points. First, Johnson's conduct was not just a waste of public time and resources. It disrupted the administration of justice, interfered with the orderly work of the federal courts, and flouted the respect due to judges and attorneys sworn to uphold the law. Much more than a warning about our internet-addicted culture, Johnson's actions are a reminder that respect for the rules that support the law is inseparable from the rule of law itself.

But a second follows: for bad acts to constitute crimes, at trial the Government must prove each element beyond a reasonable doubt. This is because the Government, through the United States Attorney, "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). That is why the right to the jury trial "is justly esteemed one of the principal excellencies of our constitution." *Thompson v. Utah*, 170 U.S. 343, 350 (1898) (quoting Juries, 3 Matthew Bacon, A New Abridgment of the Law (1736)). A "great privilege," brought to the United States as a "birth-right and inheritance . . . against the approaches of arbitrary power" demands proof of each element specified by the people, through Congress, constituting a crime sufficient to forfeit liberty. 3 J. Story, Commentaries on the Constitution of the United States § 1773, at 652–53 (1833).

That ancient guarantee was not honored. While Johnson's actions were malicious, the Government failed to prove they were material to the only decisionmaker identified at trial, the Judge. And Congress requires both falsity and materiality to impose liability under 18 U.S.C. § 1001. As a result, we will reverse Johnson's false statement (Count 1) and aggravated identity theft (Count 2) convictions, remanding for the entry of a judgment of acquittal.