# U.S. Court of Appeals for the Third Circuit

No. 24-3156

PAWNEET ABRAMOWSKI, et al.
Appellants

v.

NUVEI CORP., et al.

_____

On Appeal from the U.S. District Court, D. Del.
Judge Gregory B. Williams, No. 1:23-cv-00965

Before: PORTER, FREEMAN, and CHUNG, *Circuit Judges*
Argued Oct. 22, 2025; Decided Feb. 3, 2026

_____

OPINION OF THE COURT

PORTER, *Circuit Judge*.

Appellants were shareholders in Paya Holdings, Inc. ("Paya") who, in response to a tender offer from Defendant-Appellee Nuvei Corporation ("Nuvei"), tendered their shares for payment. Nuvei rejected Appellants' shares as invalidly tendered under the parties' private agreements. Appellants sued, claiming, among other things, that the Securities and Exchange Commission's ("SEC") Best Price Rule required Nuvei to purchase their tendered shares. The District Court dismissed the suit. Because the Best Price Rule is silent as to

whether tender offerors may enforce restrictions on the transfer of tendered shares, we will affirm.

I

A

Appellants were the "Sponsors" of a special purpose acquisition vehicle ("SPAC")[1] named Fintech Acquisition Corp. III. Joint Appendix ("J.A.") at 62–63. In August 2020, Fintech merged with Paya, thereby taking Paya public. On the same day, Appellants entered into a Sponsor Support Agreement ("SSA") with Paya whereby their Fintech "promote" shares were converted into "Earnout Shares" in Paya. J.A. at 187. To align the Appellants' long-term interests with Paya's other shareholders, the Earnout Shares were nontransferable, with limited exceptions not relevant here, until October 16, 2025—the end of the "Earnout Period." J.A. at 189. The SSA provided that the Earnout Shares would become transferable upon "the first Change in Control to occur during the Earnout Period" if the price per share paid was above $15.00. J.A. at 187–88. But if the price per share was below that amount, "none of the Earnout Shares subject to transfer restrictions shall become free of transfer restrictions . . . and all of the Earnout Shares shall be automatically forfeited immedi-

---

[1] A SPAC is a publicly traded company whose sole mission is to merge with a private company in a "de-SPAC" transaction, akin to an IPO, causing that company to become public with an infusion of the SPAC's capital. *See generally* Julie Young, *Special Purpose Acquisition Company (SPAC) Explained: Examples and Risks*, Investopedia (updated Feb. 6, 2025), https://perma.cc/833W-LK2M.

ately prior to the consummation of such Change of Control." J.A. at 188.

B

On January 8, 2023, Paya entered into a Two-Step Merger Agreement with Nuvei under Delaware Code Title 8, section 251(h). Pursuant to the Merger Agreement, Nuvei would "purchase all the shares of [Paya] Company Common Stock" for $9.75 per share by "means of an offer to purchase." J.A. at 353, 375. In the Offer to Purchase, Nuvei covenanted to "irrevocably accept for payment all Shares validly tendered," which required, *inter alia*, that the shareholder submit "a properly completed and duly executed Letter of Transmittal in accordance with the instructions of the Letter of Transmittal." J.A. at 226, 229. The Letter of Transmittal, in turn, stated that the shares are validly tendered only if the shareholder "has full power and authority to tender, sell, assign and transfer any and all of the Shares tendered hereby." J.A. at 445. Nuvei's offer was to be consummated at midnight on February 22, 2023, on the condition that the number of shares "validly tendered" totaled one share greater than 50% of the outstanding shares as of the consummation time. J.A. at 212.

C

Appellants tendered their Earnout Shares in response to Nuvei's tender offer, but Nuvei did not purchase them because under the SSA they "were not tendered free and clear of all liens, restrictions, charges and encumbrances and not subject to any adverse claims." J.A. at 292. Appellants sued, claiming Nuvei violated the SEC's Best Price Rule, 17 C.F.R. § 240.14d-10(a)(2)—which requires the offeror to pay the same

3

consideration for all securities tendered—by paying the Appellants $0 per share while other common stockholders received $9.75 per share. The District Court granted Nuvei's motion to dismiss for failure to state a claim, rejecting Appellants' Best Price Rule theory because no consideration was "actually" paid so the Rule was never triggered. J.A. at 14. Appellants appeal only that holding.

## II[2]

The Best Price Rule and the related All Holders Rule were "promulgated pursuant to sections 14(d) and 14(e) of the Williams Act," which itself was "enacted for the purpose of protecting target company shareholders" in tender offers. *Polaroid Corp. v. Disney*, 862 F.2d 987, 996 (3d Cir. 1988). The All Holders Rule requires that a tender offer be "open to all security holders of the class of securities subject to the tender offer." 17 C.F.R. § 240.14d-10(a)(1). The Best Price Rule, in turn, requires the offeror to pay "to any security holder for securities tendered in the tender offer [ ] the highest consideration paid to any other security holder for securities tendered in the tender offer." *Id.* § 240.14d-10(a)(2).

---

[2] The District Court had jurisdiction under 18 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the district court's grant of a motion to dismiss for failure to state a claim de novo. *See Vallies v. Sky Bank*, 432 F.3d 493, 494 (3d Cir. 2006). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

We have addressed each rule just once. First, in *Polaroid Corp.*, we held that the All Holders Rule is validly within the SEC's rulemaking authority under the Williams Act and that Section 14(d) of the Act creates an implied private right of action to enforce the provision. 862 F.2d at 994–97. Because the plaintiff lacked standing, we did not reach the question—similar to the one presented here—whether a tender offeror may reject certain shares based on its own determination that those shares are invalid under the terms of the tender offer. *Id.* at 992. Second, in *In re Digital Island Securities Litigation*, we held that Rule 9(b)'s heightened pleading standard for allegations of fraud applies to Best Price Rule claims and that payments made before the commencement of a tender offer are generally excluded from the reach of the Best Price Rule. 357 F.3d 322, 334–37 (3d Cir. 2004). This appeal presents a novel question of law: Whether the Best Price Rule requires the acquiring company in a tender offer to purchase any tendered shares, even those that are subject to self-imposed transfer restrictions. We hold that it does not.

When interpreting a federal regulation, "we look to well-established principles of statutory interpretation." *Bonkowski v. Oberg Indus.*, 787 F.3d 190, 199 (3d Cir. 2015). Our analysis of the Best Price Rule "begins and ends with the ordinary meaning of" its plain text. *United States v. Johnson*, 114 F.4th 148, 154 (3d Cir. 2024). Appellants argue that, because they are "security holders of the class of securities subject to the tender" whose "securities [were] tendered in the tender offer," 17 C.F.R. § 240.14d-10(a)(1)–(2), they are entitled to the $9.75 share price other shareholders received.

That reading goes too far. It is true that the Appellants were common stockholders at the time the tender offer was

5

initiated[3] and that they tendered their shares in response to the offer. But it would contort the Best Price Rule beyond recognition to suggest that the Rule requires offerors to purchase every tendered share, even those restricted by the parties' prior agreements. Again, the Rule requires that the consideration paid to one tendering shareholder must be the same as the highest consideration paid to any other tendering shareholder. By its plain terms, the Rule relates to the consideration that must be paid to tendering shareholders at the completion of a proposed tender offer. But it is silent as to when, if ever, an offeror must purchase tendered shares or whether that offeror may include in the tender offer terms and conditions of acceptance, such as Nuvei's requirement that the tendered shares be freely transferable or outstanding at the consummation of the change of control. We are unable to rewrite the Best Price Rule to say something that it does not; that is a job for Congress and the SEC. *See Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'") (quoting Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 94 (2012)).

---

[3] The All Holders Rule requires an offer to be "open to all security holders" of the same class of securities. 17 C.F.R. § 240.14d-10(a)(1). The Merger Agreement describes Appellants' Earnout Shares as common stock. J.A. at 387 (noting there were "132,238,723 shares of Company Common Stock . . . issued or outstanding, *of which 5,681,812 are subject to earnout and forfeiture in accordance with the Support Agreement*.") (emphasis added). It is undisputed that Nuvei's tender offer was open to Appellants and thus complied with the All Holders Rule.

Appellants' reading of the Best Price Rule also runs counter to a relevant provision of the Williams Act. *See* 15 U.S.C. § 78n(d)(7); *cf. Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 9 n.9 (1985) ("Section 14(d) [ ] imposes specific substantive requirements on those making a tender offer. These requirements include . . . the payment of the same price to all those whose shares are purchased, 15 U. S. C. § 78n(d)(7)."); *Polaroid Corp.*, 862 F.2d at 994–95. Section 78n(d)(7) requires equal payment, but only to those security holders "whose securities are taken up and paid for pursuant to the tender offer." 15 U.S.C. § 78n(d)(7). In other words, the statute presupposes that a tendered share might not be taken up and paid for, leaving room for terms and conditions such as those in Nuvei's offer.

Appellants point to broad pronouncements in the Rule's legislative and regulatory history to support their strained reading. But "[w]here the statutory language is unambiguous, the court should not consider statutory purpose or legislative history." *In re Phila. Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010); *see also New Jersey v. New York*, 523 U.S. 767, 813 (1998) (Breyer, J., concurring) ("[S]ilence is not ambiguity[.]"). In any event, our reading comports with the SEC's guidance, common sense, and longstanding industry practice. *See, e.g.*, *In re WHX*, Exchange Act Release No. 47,980, 80 S.E.C. Docket 1153 (June 4, 2003) (noting that it is common for an offer to be "open to all shareholders, but an action taken independently by an individual shareholder encumbers the shares and limits the shareholder's ability to participate in the offer"), *overruled on other grounds by WHX Corp. v. SEC*, 362 F.3d 854 (D.C. Cir. 2004).

7

Because federal law is silent on the issue presented, it is governed by the parties' private agreements formed under state law. Appellants did not appeal, and we do not reach, the District Court's holding that Nuvei did not breach the Merger Agreement by refusing to purchase the Earnout Shares because, pursuant to the SSA, those shares were forfeited prior to the consummation of the change of control.

\* \* \*

For these reasons, we will affirm the District Court's order dismissing Appellants' Best Price Rule claim.

*Counsel for Appellants*
Javier Bleichmar
Derrick Farrell [**ARGUED**]
BLEICHMAR FONTI & AULD

*Counsel for Appellees*
Brian Burnovski [**ARGUED**]
Chui-Lai Cheung
Matthew Cormack
DAVIS POLK & WARDWELL

Kevin M. Coen
MORRIS NICHOLS ARSHT & TUNNELL